UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ANGELINA R. E.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

NO. 1:22-CV-3065-TOR

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 11, 12). Plaintiff is represented by D. James Tree. Defendant is represented by SAUSA David J. Burdett. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On October 10, 2019, Claimant protectively filed an application for Title XVI supplemental security income benefits, alleging a disability onset date of October 1, 2019. Tr. 15. The application was denied initially, Tr. 50-59, and on reconsideration, Tr. 60-70. Claimant appeared at a telephonic hearing before an administrative law judge ("ALJ") on May 19, 2021. Tr. 28-49. On May 26, 2021, the ALJ denied Plaintiff's claim. Tr. 15-23.

At step one of the sequential evaluation analysis, the ALJ found Claimant had not engaged in substantial gainful activity since October 10, 2019, the application date. Tr. 17. At step two, the ALJ found Claimant had the following severe impairments: depressive disorder, posttraumatic stress disorder (PTSD), and polysubstance dependence. *Id*. At step three, the ALJ found that Claimant's impairments did not meet or medically equal the severity of a listed impairment. Tr. 17-18. The ALJ then found that Claimant had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [S]he can understand, remember and carry out simple instructions and exercise simple workplace judgment; she can perform work

> that is learned by on the job training beyond a short demonstration lasting up to and including one month; she can respond appropriately to supervision but should not be required to work in close coordination with coworkers where teamwork is required; she can deal with occasional changes in the work environment; and she can work in jobs that require no interaction with the public to perform work tasks but does not preclude working environment where the public is present.

Tr. 19.

At step four, the ALJ found that Claimant had no past relevant work. Tr. 22. At step five, the ALJ found, based on Claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Claimant could perform, such as industrial cleaner, vehicle cleaner, and salvage laborer. Tr. 22-23. The ALJ concluded Claimant was not under a disability, as defined in the Social Security Act, from October 10, 2019 through May 26, 2021, the date of the ALJ's decision. Tr. 23.

On March 18, 2022, the Appeals Council denied review, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Claimant seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Claimant raises the following issues for this Court's review:

1. Whether the ALJ reversibly erred by improperly rejecting Claimant's symptom testimony for reasons that were not clear and convincing; and
2. Whether the ALJ reversibly erred by improperly evaluating the medical opinion evidence.

ECF No. 11 at 2.

## DISCUSSION

### A. Subjective Symptom Testimony

Claimant contends the ALJ failed to rely on clear and convincing reasons to discredit Claimant's subjective symptom testimony. ECF Nos. 11 at 4–10; 15 at 2–4.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035–36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than

treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7–8; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 19. In arriving at this conclusion, the ALJ considered several of the factors described above.

The ALJ found that Claimant's mental health complaints were out of proportion to the objective medical evidence. Tr. 20. Claimant contradicted herself when and whether she was using methamphetamine and marijuana. *Id*. She reported auditory hallucinations, yet was attentive and completely oriented on exam. *Id*. In September 2020, she reported smoking THC yet had a euthymic mood and full affect, logical thought, within normal limit of cognition, displayed average intelligence, and had normal insight and judgment. *Id*. Despite allegations of disabling depression and PTSD related symptoms, Claimant was not fully

compliant with her treatment. Tr. 20-21. While Claimant has issues with substance abuse and medication compliance, she shows appropriate / normal mood and within normal limit cognition. Tr. 21. The ALJ also noted that there is a situational component to Claimant's mental condition, rather than due solely to her medically determinable impairments. Tr. 21.

The Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record to discount Claimant's subjective symptom testimony.

**B. Medical Opinion Evidence**

Claimant challenges the ALJ's evaluation of Thomas Genthe, Ph.D.'s medical opinion. Tr. 11 at 10-20.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. 20 C.F.R. § 416.920c(c); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The ALJ applied the new regulations because Plaintiff filed her Title XVI claim after March 27, 2017.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight … to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867-68. Instead, an ALJ must consider and

evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)-(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)-(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 416.920c(b)(2). These factors are explained as follows:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(c)(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. § 416.920c(c)(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). As a result, the ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id*.

Dr. Genthe assessed Claimant with marked to severe impairment in several areas of functioning. Tr. 286-87. The ALJ found this assessment neither well supported nor consistent with the record. Tr. 21. The ALJ also noted that Dr. Genthe reviewed no records. Tr. 21. As a result, Dr. Genthe did not have full knowledge of the longitudinal record. *Id*. The ALJ pointed out the contradictions in methamphetamine use reported to Dr. Genthe and at other places in the record. Tr. 21-22. Dr. Genthe claimed deficits in cognitive functioning on exam which contradicted her performance on mental status exams throughout the record which

primarily showed within normal limit cognition. Tr. 22. Dr. Genthe also assessed marked to severe limitations in several areas of functioning which was inconsistent with the record that showed improvement in symptoms with medication. *Id*. Finally, Dr. Genthe's opinion was inconsistent with claimant's activities including the ability to tend to her personal care, perform a variety of chores, use public transportation, and care for her dog including seeking care for it at a veterinarian when needed. *Id*.

Moreover, the ALJ used Renee Eisenhauer, PhD and Michael Brown, PhD's opinions. Tr. 22. They both reviewed the record and their opinion is consistent with the medical evidence. *Id*. The record showed improvement in mental health symptoms with medication, that claimant consistently displayed intact cognition on mental status exams regardless of substance use, claimant endorsed some problems with social functioning, but she attended appointments independently and interacted appropriately with providers. *Id*. Claimant's mental status exams showed the Claimant as cooperative. *Id*. Claimant uses public transportation. *Id*. Finally, the ALJ compensated for the Claimant's cognitive and social limitations in the residual functional capacity assessment.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.
2. Defendant's Motion for Summary Judgment (ECF No. 12) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED December 20, 2022.




THOMAS O. RICE
United States District Judge